MATILDA STRUBLE, APPELLEE, V. VILLAGE OF DEWITT, APPELLANT.

FILED JUNE 26, 1911. No. 16,235.

1. Appeal: LAW OF THE CASE. Upon the first trial of the case defendant objected to an instruction given by the court, and prepared and offered an instruction in lieu thereof. Upon appeal this court reversed the judgment for error in the instruction given, and in refusing the requested instruction. Upon a second trial the court gave the instruction formerly requested by defendant and approved by this court. *Held*, That upon second appeal of the same case this court will not reverse the judgment because of alleged error in said instruction.

2. Damages: INJURY TO MARRIED WOMAN. A married woman who is accustomed to receive compensation for services rendered and work performed for others than her own family may contract for medical services or other necessaries for herself and family, and in an action by her to recover damages for personal injury it is not error to instruct the jury that she can recover "such amount as she has necessarily expended for medical care," and that they should include "such reasonable charges as she has incurred and become obligated to pay."

3. Evidence: NONEXPERT EVIDENCE: PERSONAL INJURY. Nonexpert witnesses are competent to testify as to circumstances and conditions that any person of ordinary intelligence might observe,

and such witnesses may testify whether a person who has been injured, and with whom they were familiar, appeared to be suffering pain, the appearance of her injury, and similar matters observed by them tending to show the nature and extent of the injury.

4. Damages: PERSONAL INJURY: QUESTION FOR JURY. When the evidence is conflicting as to whether physical conditions existing some time after a personal injury were caused or affected by such injury, the question should be submitted to the jury upon all of the evidence.

5. Witnesses: CONFIDENTIAL COMMUNICATIONS. When part of a confidential communication between physician and patient is put in evidence by one party, the other party may give the whole communication "on the same subject." The trial court must determine whether the evidence offered is on the same subject, and its ruling will not be regarded as erroneous unless there is a clear abuse of discretion.

6. Municipal Corporations: DEFECTIVE SIDEWALKS: CONTRIBUTORY NEGLIGENCE: DIRECTING VERDICT. In an action against a municipal corporation for injuries sustained by a fall upon a defective walk, the fact that the person injured had passed over .the same walk several times before the accident, and might have avoided the danger by taking another way, and was in a delicate physical condition, and was carrying articles which made it more difficult to avoid the accident, will not constitute such evidence of contributory negligence as to require a peremptory instruction for the defendant.

7. Damages: EVIDENCE. A verdict for $25 for "medicine, doctor's bills and nurse's bills" will not be set aside as unsupported, although there is no evidence that any nurse's bills have been incurred, the evidence being sufficient to support a verdict in that amount for "doctor's bills" incurred.

8. ———: ———. A verdict for $200 for "permanent injuries" will not be set aside as unsupported if the evidence justifies a finding of damages in that amount for injuries sustained as alleged.

APPEAL from the district court for Saline county: LESLIE G. HURD, JUDGE. *Affirmed.*

*Ralph D. Brown* and *Venrick & Green,* for appellant.

*Bartos & Bartos* and *Hall, Woods, Bishop & Pound, contra.*

SEDGWICK, J.

The plaintiff obtained a verdict and judgment in the district court for Saline county against the defendant for damages resulting from a fall upon a defective walk in the defendant village. The defendant has appealed.

1. The first contention of the defendant is that the court erred in giving the following instruction: "The defendant is not required to have the sidewalks so constructed or maintained in such condition of repair as to secure absolute immunity in using them, nor is it bound to employ the utmost care and exertion to that end. Its duty under the law is only to see that its sidewalks are reasonably safe for persons exercising ordinary care and caution." The criticism is that the jury should not have been told that the village was required absolutely "to see that its sidewalks are reasonably safe," but the village is only required to use reasonable diligence in that regard. If the instruction complained of was the only one defining the duty of the village there might be some ground for this criticism. The court, however, correctly instructed the jury as to the necessity of notice to the defendant of the defective condition of the walk, or circumstances which would imply such notice, and that the plaintiff could not recover unless the jury also found from the evidence that the defect in the sidewalk was caused "by the failure of the officers of the defendant village to use reasonable diligence to keep the walk upon which plaintiff received her injuries in a reasonably safe condition for use by persons passing over it using ordinary care and prudence."

It must also be considered that an instruction in the language complained of was approved by this court in *City of Lincoln v. Smith*, 28 Neb. 762; *City of Beatrice v. Reid*, 41 Neb. 214; *City of Aurora v. Cox*, 43 Neb. 727, and in *Anderson v. City of Albion*, 64 Neb. 280.

From the opinion in this case upon a former appeal (81 Neb. 504) it appears that upon the first trial in the district court the defendant village requested the court to give the

identical instruction now complained of, and in consider-
ing the instruction this court in the opinion said that this
instruction, and another one there mentioned, "correctly
stated the law, were in point, and should have been given."
The trial court accordingly upon the second trial gave the
instruction which had been requested by the defendant and
had been approved by this court, and the defendant cannot
now insist in this case that the court erred in so doing.

2. It is contended that the court erred in instructing the
jury as to the measure of damages. That part of the in-
struction objected to is as follows: "The measure of her
damages is such amount as she has necessarily, expended
for medical care and nursing and medicines. As to these
items it is not necessary that she should actually have paid
them, but you are entitled to include such reasonable
charges as she has incurred and become obligated to pay."
The plaintiff is a married woman, and it is stated in the
brief that "the testimony fails, absolutely, to show that she
was possessed of any separate estate." This, it is said,
brings the case within the rule laid down in *Pomerene Co.
v. White,* 70 Neb. 177, and the following is quoted from the
syllabus and opinion in that case: "In an action for per-
sonal injuries by a married woman, she is not entitled to
recover the value of medical services rendered, in the ab-
sence of proof that she has paid for such medical services,
or that she is the owner of a separate estate which might
become liable therefor. * * * As the testimony in this
case fails to show the existence of a separate estate owned
by plaintiff, or that she has actually expended any money
for medical services, under these circumstances, we are
compelled to conclude that the right of action for medical
services inures to plaintiff's husband and not to her, and
that the instruction submitting this element of damages to
the jury is unsupported by the testimony."

The defendant says that the testimony shows that the
plaintiff had contracted a doctor's bill of considerable
amount, and that a part of it at least was unpaid at the
time of the trial, and that it was error to allow her to re-

cover for these items without showing that she had actually paid them. The services of the physician are necessary for one who is injured or ill, and by our statute both husband and wife are liable for such services when rendered for a member of the family. Undoubtedly, when it is attempted to hold a married woman liable as surety or on some contract not beneficial to her, it is necessary to show that she had some separate estate at the time, to which such contract might relate, as held in *Kocher v. Cornell*, 59 Neb. 315. Our statute provides that a married woman may carry on any trade and business and perform any services on her own and separate account, and that her earnings from such business or services shall be her sole and separate property. Ann. St. 1909, sec. 5320. And that any property which she acquires by purchase or otherwise shall remain her sole and separate property. Section 5317. In *Riley v. Lidtke*, 49 Neb. 139, this court said: "Earnings acquired by the wife as a laundress and seamstress for others than her family do not belong to the husband; but are the sole and separate property of the wife," and it was said that the fact that such earnings were applied to the support of her family did not change the rule. The evidence in this case shows that the plaintiff performed services as a laundress for her physician who attended her and for others, both before and after the injuries complained of, and that she applied some of these earnings in payment of the physician's services rendered at the time of this injury. These earnings would be her separate property and she was competent to contract with reference thereto. The instruction complained of is to be distinguished from the one criticised in *Pomerene Co. v. White, supra,* in that it limits her recovery for unpaid medical services to "such reasonable charges as she has incurred and become obligated to pay." There is sufficient evidence in the record from which the jury might find that she had incurred and become obligated to pay for the services of the physician incident to the injury complained of. The instruction therefore was not erroneous.

3. The next contention is that the court erred in receiving evidence objected to by the defendant. About four and one-half months after the injury complained of, the plaintiff gave birth to a child, which lived for only a few minutes, if at all. The physician testified that the child was stillborn. The plaintiff was allowed to testify to her condition at the time of its birth. This testimony was objected to on the ground that there was no evidence tending to show that the conditions then existing were caused by or resulted from the injury complained of. Dr. Wiggins, who was one of the trustees of the defendant village at the time of the accident, at first testified that he did not know what was the cause of the death of the child, but afterwards testified that he did not think that it was in any way caused by the injury complained of, and there was evidence that the plaintiff had at a former time suffered a miscarriage. The plaintiff and several other witnesses who had assisted in caring for her after her injury, but who had no expert knowledge, testified to certain circumstances and conditions resulting from the accident from which the jury might have found that the injury complained of was the cause of her subsequent misfortune. This evidence was objected to upon the ground that the witnesses had not sufficient knowledge to testify, but we think the evidence was properly admitted. The testimony of these witnesses does not relate to matters that require expert knowledge. They testified to circumstances and conditions that any person of ordinary intelligence might observe and understand. The affidavit of Dr. Love appears to have been in evidence, in which he stated that he examined the plaintiff; that he found injuries caused by some violent and external force of such a nature as to render it likely that she could not afterwards give birth to a fully formed child. This question was properly submitted to the jury.

4. It is insisted that the court erred in excluding evidence offered by the defendant. Dr. Wiggins was her attending physician from the time of her injury to the birth of her child. As a witness for the defendant he was asked:

"Q. Now, at any one of those visits at that time did you have any conversation or was anything said as to any previous miscarriages?". The plaintiff's attorney objected to this question on the ground that it related to a privileged communication. The contention is that this was not a privileged communication, because the plaintiff had herself testified to conversations with the physician in regard to her injury, and the condition that resulted therefrom, and as to his treatment and directions. The defendant relies upon the provision of the statute that "when part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other. * * * And when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence." Code, sec. 339. The trial court evidently thought that the matter inquired into by this question was not the "same subject" of conversation testified to by the plaintiff, and that it was not necessary to explain that conversation. A considerable latitude must be allowed a trial court in such matters, and we do not think that this was such an abuse of discretion as to require a reversal.

5. The next contention of the defendant is that the plaintiff was guilty of contributory negligence. It is said in the brief "that different minds could not honestly reach different conclusions without reasoning irrationally." It appears from the evidence that the plaintiff had passed over this walk "possibly twice before" the accident, and it is argued that she must have known the condition of the walk and should have walked in the road, as the road was in good condition and she had during a part of her walk, where there was no sidewalk, followed the road. The plaintiff was also carrying several packages, and the burden of these packages may have contributed to her accident. It is difficult to believe that the defendant's counsel is serious in these contentions. If these circumstances

afforded any evidence whatever of contributory negligence, the most that can be said is that it was a question for the jury.

6. The final objection is that the evidence is insufficient to sustain the verdict. The verdict was for "$25 for medicine, doctor's bills and nurse's bills, and $200 for permanent injuries." The record does not show that any nurse was employed, except perhaps plaintiff's sister or some member of the family, but it does show that the physician attended her for a considerable time and made many visits. The physician was not allowed to testify as to the amount of his charges. The plaintiff testified that the physician made 30 or 35 visits altogether, and there is evidence indicating that about half of these visits were at the time or directly connected with the injury complained of. The evidence justified the finding that the plaintiff's liability to the physician was at least the sum of $25. The amount of damage allowed for permanent injuries is not large. The first jury found greater damages. The verdict is amply sustained by the evidence.

We have found no reversible error, and the judgment of the district court is

AFFIRMED.